System Fuels, Inc. v. United States Okay, your name I can't even pretend to try to pronounce. Come on, let me have it. What is it? Thomas Chuck, Your Honor. Thomas Chuck, okay. There's a lot of consonants and two Zs, not even next to each other like in pizza or anything. So that's hard. Don't remind me, Your Honor. My children have trouble with it even now. Very good. Please proceed. Thank you. Good morning. May it please the Court. These two cases Which one is first, the Braden one or the Leto one? The Braden one is first, but Your Honor, on that score, my understanding is that the argument for both has been consolidated, so I planned to say something. Oh, I didn't. Did we consolidate? I don't have it. You're mistaken. All right. No, there you go. Then I withdraw that comment. But you know what, since you've offered, any objection, anybody to consolidating it? I couldn't see why it wasn't. Okay, very good. Then it's consolidated. There are similar issues in both cases. Thank you. And the issue in the case, in both cases indeed, is whether the plaintiffs are entitled to recover their actual incurred costs for loading casts of spent nuclear fuel, which is periodically referred to as S&F. Is it true that we have these two opinions by these two judges, which seem to me to be somewhat at odds with each other, despite being on virtually the same record, as well as two other opinions, one by Judge Kostra-Williams and a fourth, I don't remember who it's by. Judge Bruggen. Judge Bruggen, which are also on virtually the same record, and that none of these four opinions sort of go down the same path? I think that's a fair characterization. Each of them seem to resolve the same exact issues, the same parties, virtually the same record, different ways. I think that's a fair observation. For example, we filed the notice of supplemental authority. Judge Kostra-Williams denied the storage costs claimed in that case. Judge Bruggen, in a decision that was rendered just a few months ago, granted them. So there is, I think, inconsistency in the trial court, which explains in part why we're before this trial court. And it's all you, and it's all these facilities you have. This isn't different parties, different record. It's your various facilities. And in fact, if I understand this record right, because this is an ongoing partial breach by the government, and there's a six-year statute of limitations, aren't you about ready to file another one of these to recoup your damages for the most recent six-year period? This is the one that pertains to the past six-year period. That is also correct, Your Honor. We're required, because of the running of the statute of limitations, to bring a new action every six years, or we lose those costs. And those in turn, yeah. And on that score, the current projection, just for the benefit of the Court's question What's the half-life of your case? Well, the current projection is that the Department of Energy is now going to commence performance in 2048. 2048? That's 32 years out from now. So I fear that these issues will, coming before this honorable court, I hope not frequently, but certainly from time to time. In the Grand Gulf case So here, let me just summarize one of the problems I'm having with these two cases, and definitely the different ways that the two judges and the opinions appealed to us dealt with them, because they're at odds, as well as the other two judges, which also don't seem to take a systematic track to this. And my bigger question, it's a big picture question. If I'm not mistaken, you have argued that these are storage loading costs. These are not transportation loading costs, correct? Yes, Your Honor. And there is no question that if the government had performed, you would not need to load things for storage, correct? That is also correct. And Judge Leto found all of that as a matter of fact, did he not? Well, he made some findings along those lines. That's what I thought. Then, wait, time out, let me just keep going down my little road here. So if these are all storage related costs, and isn't it also true that under the current standard contract and current regulation, none of the casks, none of the casks that you have loaded this spent nuclear fuel into would be allowed to be used for transportation and accepted at facilities if there was a sudden facility created? Judge Leto found that as a matter of fact, he did. He found as a matter of fact that the casks would not be accepted, did he not? He found that there were uncertainties as to whether or not the storage casks, which are located at the Energy Arkansas facility, could be transported. And in point of fact, there's testimony in the record, Your Honor. From the Department of Energy official, right? Is there testimony that he, under the standard contract, this also? There was testimony in the record from Mr. David Zebranski, who was the then contracting officer, that the government, the Department of Energy, was not obligated under the contract as it exists today to pick up the canistered fuel. Question. You've also testified that in the absence of an amendment to the standard contract, the spent nuclear fuel and dry storage casks would have to be unloaded from those casks and loaded into DOE-provided transportation casks. Is that correct? Answer. And this is the DOE official that you're talking about. Zebrowski? Yes? Yes. The canister fuel would need to be, in essence, un-canistered and put in a transportation cask for acceptance. Yes. Is that the DOE position? Yes. So why is the government not on the hook, given that they have said, as of now, they would absolutely not accept these casks for transportation. They absolutely wouldn't. They would make you take all of the fuel out of the casks you put them in, move them into transportation-ready casks, and then they would accept those. So why aren't they on the hook for all the storage costs? I think they are, Your Honor, and that's precisely why I'm here. In both cases, I think the government should be on the hook for all of the storage costs because this is a cost based on the record, which the court just cited. But the record seems undisputed. Am I missing something? This is the government's witness. I don't see anything in this record that suggests the government would accept these There is nothing in the record that suggests the government will accept these costs, which is why we will incur these costs. But not accept these costs. Accept these casks. I'm sorry, not accept these casks. I misspoke. Thank you. Okay. Which is why we will incur these costs again in the future at such time as DOE comes to the site and brings a transportation cask and then takes that transportation cask to some storage facility. So why did you tell your expert, Ms. Sutko, not to quantify the cost of non-breach preparation and packaging? I think there are several reasons, Your Honor. First of all, there is a case which we submit is on point here, and that's the Carolina Power and Light case. And that case instructs us that loading costs are deferred costs that need not be modeled. So we have a binding Federal Circuit precedent which governs the instruction to our expert. Second, I would submit, Your Honor, we're disinclined to have our experts speculate about DOE's performance in the non-breach world. The information about DOE's non-breach world performance, that's within the Department of Energy's province and control. And indeed, the rules of evidence limit speculation by experts. Rule 702B requires that experts' testimony be, quote, based on sufficient facts or data. Here, there are no facts or data on which a credible expert can opine. That's information that the Department of Energy controls because they are the party under Article IV of the contract, and this is in the appendix, that the Department of Energy is required to bring a transportation cask to our sites. And this is where Judge Leto concluded they obstructed you in part by not ever telling you what kind of cask they would provide you, so it made it difficult for you to estimate the cost associated with that. Is that the idea? Yes, that is the idea, Your Honor. But apart from the difficulty associated with estimating it, I guess I don't even understand why that's relevant in light of his finding. And I went back to, because you almost looked perplexed at me when I said he made this finding. On page A14 of his opinion, you can trust me, I'll read it accurately. As matters now stand, all of the SNF stored at ANO's IFCFI will have to be extracted and then reloaded for transportation by DOE. That's a fact finding by Judge Leto, correct? And it's a correct fact. So I guess the point I'm wondering is why, since you will absolutely in the future, under this fact finding, have to take all the junk out of the casks it's stored in now and move it to something else for transportation, then why is this not properly categorized, as he did in the first half of his opinion, as a storage cost and not a cost related to transportation? Respectfully, we submit that Judge Leto erred in that regard, and he should have awarded all of the actual incurred storage costs that we incurred at ANO. And it seems to be, there seems to be some confusion in the record. The most I can get out of the government's argument is a bit of smoke and mirrors in that, well, it's possible we will change either the standard contract in the future or the regulations. It's also possible that some of these things may change such that maybe under those circumstances the casks will be allowed to be used for transportation. But that's not the current state of the law or the facts, right? Correct, Your Honor. Okay. It is not. And so if that does happen, and you have gotten, if for some reason the government starts complying in 2048, and if these casks are not so degraded at that point that the government will actually allow you to use them for storage, which is quite frankly an absurd proposition given what we're dealing with in terms of the contents. But if that is the case, then couldn't they come after you to recoup? Because if it turns out that they've changed the law, they've changed the regs, and if the facts change, and these do get used for transportation at that point, couldn't they come back to you and offset some future damages provision by virtue of that? I'm sure the government could ensure that it's not harmed in the event it does perform as required under the contract and brings a transportation cask. But I want to emphasize again... Do the storage casks degrade because of their contents? The technical evidence about that in the record is that yes, they do, Your Honor. I think that is a subject of study both by the Department of Energy itself as well as the Nuclear Regulatory Commission. Does it depend on the type of fuel that's being stored in them, the length of the storage period, that sort of thing? Yes, it does, Your Honor. The key point I want to make before this court is that these are actual incurred costs... There's a key point beyond what we just discussed? Okay, go ahead. The point I want to reiterate and reemphasize is that these are actual incurred costs which we would never have incurred had the Department of Energy performed. In both cases, the record is clear that we would never have built a dry fuel storage facility. Therefore, there would have never been any loading of storage casks and as a matter of step... Now, I feel like we have to address because we've got these two different cases. Judge Leto's opinion went through a lot of what you and I just discussed in a lot of detail and he seemed to make fact findings that I thought were completely consistent and he awarded you most but not all of the damages you sought. In the Judge Braden opinion, even though you made all these arguments and I saw them, she didn't address any of them as far as I can tell. She didn't address, for example, she didn't even discuss in any detail the fact that you have to take this stuff out of these storage casks and put them in different casks to send them. I find her opinion and the brevity of it a little bit more difficult to track the resolution. As do we and I would submit, Your Honor, that it was essentially the same record involving many of the same witnesses. On that score, though, Judge Braden has a finding that we submit is clearly erroneous and this is in the appendix in the Grand Gulf case, the first case at page 828. She says in pertinent part, page 828 of Judge Braden's opinion. Just give me a second. Yes, Your Honor. But she does acknowledge, by the way, at page 827 that DOE positions that will not accept the SNF in the SNF canisters that it's in currently under the standard contract. Yes. She acknowledges that same thing, that these storage containers are not going to be allowed to be used for storage under the current rules. Right, and that was the same testimony of the then Department of Energy contracting officer, Mr. David Zebranski. What I wanted to call the Court's attention to where I think Judge Braden made at least one finding that is clearly erroneous and the Court is right. But at page 828 in the right-hand column under the paragraph heading 18, she observes, That statement doesn't make any sense because there is no obligation under the contract for us to prepare and package spent nuclear fuel for dry storage. What DOE is required to bring under Article 4 of the contract and what was envisioned by the contract is a transportation cast. So that finding we submit is clearly erroneous. And we also submit that in both cases the Court, I think, the Court's failed to fully consider the effect of this Court's decision in Carolina Power & Light, which holds that these are deferred costs. That these are costs that are going to have to be incurred again in the future and we should be entitled to recover them now. And this is a little bit, and we discussed this in our brief. Stop talking because I don't understand this argument and this deferred cost idea. I mean, I read her opinion and thought it looked like some offset, that she was still trying to use the offset logic that was rejected by Carolina Power but without expressly discussing it. But this deferred cost thing, these are, your storage costs are costs you incurred today. You're not talking about future costs, right? I just don't want you to confuse me on my understanding. It's a very complicated issue. So these are current storage costs. Yes. And if we're talking about what the costs might be in the future to move this stuff from these storage casts to storage casts that would be rendered acceptable for transportation, that is a future cost that may be incurred in the future when that actually comes to pass. Yes, Your Honor. Okay. And what I started to say about deferred costs, this is akin to this court's decision in Dominion Resources where the court may recall that it was considering the government's claim about the one-time fee and that the plaintiffs in the Dominion case had been benefited by the deferral of the payment of the one-time fee. And this court held that the government was not entitled to, if you will, take that one-time fee value and offset it against the plaintiff's claim in that case. So to hear what the government's trying to do is essentially take these future costs, which may be incurred at such time as DOE performs, and take them out of our pockets now. And we submit that's incorrect. And that might be okay if the evidence was the casts that you have loaded your storage into will double as transportation casts. That might be okay because you're responsible for loading for transportation, right? We are. You're not responsible for loading for storage. And on the undisputed facts of this record, these casts can't be used for transportation. Correct, Your Honor. Okay. I'm past my time. Yes. We'll give you a few minutes of rebuttal time. Mr. Brussell. Tell me about the government's cross-appeal. The government did not cross-appeal. Oh, that's right. So how on earth can we consider your argument about the $6,475,000 since we would have to reverse the opinion below? I'm sorry. Which argument about the $6 million? The government alleges that the claims court erred as a matter of law when it inferred that due to the government's obstruction, the system could recover $6,475,497 per cost incurred to prepare and package. Right. But I think we also point out that although we disagree with his finding there, we did not cross-appeal, and therefore the court cannot remand reconsideration of that. Okay. So we're in agreement then? Correct. Okay. May it please the Court. I'd like to go back to where Judge Moore started with his how has the trial court considered this argument? And I think there have been, to my recollection, at least five trial courts that have addressed the government's causation argument here. Judge Williams in SFI Louisiana said the plaintiffs have not met their burden of showing their non-breach loading costs. Okay, but I don't even want to hear about all these other cases because I read every one of these opinions. Well, I read four. I don't know where the fifth magical one is, but I didn't read that one. I read four, and none of them are consistent with each other at all. So clearly this is an issue in need of some clarification because you don't want, I mean, even if there's a clear error standard of review and even if we technically have to affirm every one of them under that standard, which I'm not saying is the case, but even if it were, it doesn't look good when the same party, this company, against the government gets four completely different resolutions, and that's what they have here. So let's try to just focus on these two for a second, and let's focus on the questions I was asking opposing counsel because this record shows undisputedly, as far as I can tell, which I love, I mean, I love when government people are very honest in their depositions, as they always are, that these casks that this fuel has been stored in would not meet regulatory or standard contract approval for being transportation casks. And that's correct, isn't it? I mean, that's what the government witnesses all testified. Well, Mr. Zebranski testified that under the contract, his view interprets that they will not accept canistered fuel. He did not testify about the regulatory concerns that plaintiffs raised. I just want to be clear. No, I'm glad you're clear. And the regulatory concerns only go to whether it's burnt up. If it's burnt up fuel, I know I'm going to mutilate this, then it's of a kind that can't be transported. High burn up fuel. Yeah, high, that's all right. All right, so let's put that aside then. As of now, the regulatory issue aside, because that is a dispute over what kind of fuel is in these things, and it's not clear to me that I could possibly figure that out from this record. But anyway, so putting that aside, the main issue, though, that I'm having trouble with is why aren't all these cost storage costs, in light of the fact that it is undisputed on this record that the way they have loaded these things into these particular kinds of casks, those could not be used as transportation casks under the standard contract. So if they can't be used as transportation casks, I don't know why they fall within that portion of the standard contract where they would have the obligation of paying for the loading, because these aren't loading into transportation casks. And at least as of now, the law may change, but as of now, they can't be used as transportation casks. So these are only and can only be treated as storage casks. Your Honor, the question really is, what is there a burden to show in order to demonstrate causation? Well, they showed all the stuff I just said, because that's what the record is. But Yankee Atomic says, interpreting Bluebonnet into the spent fuel context, you need to demonstrate what you would have done with DOE performance, and it's not enough to just say... But no, time out. Not what you would have done with DOE performance. The transportation, the cost of loading these things into a transportation cask under this record is still to come. It will have to be done if and when at any point in time the government complies, since these casks have been deemed not appropriate by the government for transportation. This is a pure storage cost that is incurred. This has nothing to do with transportation. This is an ongoing cost of storage. So, yes, in the future, they may bear the cost of putting these things into transportation casks. But I don't know why that would need to be deducted out of storage costs, which have nothing to do with transportation. The same argument was made by the utility in Energy Northwest. They said, we only undertook our plant modifications for dry storage. We used a dry storage cask. We put our fuel in dry storage. We weren't doing transportation under the contract. Therefore, we should recover all of our plant modification costs, and let's wait to see what happens in the future. And the court rejected that and said, it's not enough to simply label your activities for their end purpose, which is what utilities here did and what the utility in Energy Northwest was doing. What they said was, the activities we're doing are for storage, and therefore we are not responsible for them. The court said, you need to go a level below that and look at what are the actual activities you're engaging in. So here, the loading activities are things of the nature of picking up spent fuel assemblies and moving them into a cask, doing things like cleaning the cask, closing the cask. These are the activities that they bear the burden of demonstrating they would not have performed with DOE performance. They did not meet their burden. They didn't even try to meet their burden. Instead, they simply instructed their expert not to quantify their non-breach costs. I don't understand. They're still going to have to do all that stuff when they take this crap out of these casks and put them in transportation casks. And if they do... So, they have to do that. That has to happen because you all have said that they can't use these casks for transportation. Are you presuming that transportation will actually never occur and that DOE will simply never fulfill its obligation? No. The government actually put forth evidence that the industry expects, including the utilities here, for DOE to actually accept the loaded dual-purpose canisters that are sitting on their pads at those plants. Obviously, Judge Laudo didn't agree. I would point out, however, Judge Laudo did also find that $1.9 million of the costs that the utilities incurred are similar to costs they would have incurred in the non-breach world to load to DOE. So, there is a fact finding here that there is a $1.9 million overlap for which they cannot recover those costs under Yankee Atomic and Energy Northwest. And I want to get back to this point. Energy Northwest rejected the idea that because of what you are doing is to storage, you are absolved of your requirement to demonstrate what your non-breach activities were. They said you need to look at the actual activities and the costs and demonstrate that you would not have incurred them but for DOE's breach. Here, the utilities made a strategic decision not to do that. And it's perplexing because their expert, Eileen Supko, provided three pages in her testimony, in her written testimony in Mississippi and in her expert report, describing what the utilities would have done with DOE performance to prepare, package, and load their fuel. She went right up to the point of actually quantifying those which would have met their burden. But all of that testimony, it seems to me, was in the context. It was, quite frankly, before Mr. Zembrowski's testimony. I'm probably saying his name wrong. But it was in the context of, we still don't have a clear understanding of whether these casts might actually be allowed to be used for transportation and therefore are a substitute. And so what you're looking for is for her to articulate with precision how much it would have cost for transportation casts versus how much these casts with the bolted or welded closure rather than bolted closure. And then the idea would be if these casts could actually later in time be used for transportation, then maybe now all they should get is the difference between the higher costs of loading these things with the welding and the lower cost of loading them into a bolted transportation cast, which is what the government said it would have provided for transportation purposes. So that's where that differential becomes relevant. It becomes relevant if these casts, which they paid more money to put these things into and weld shut, cost more to load than it would have to load the transportation cast the government would have provided if it had performed. But I don't see how that's relevant when the state of this record in both cases is that these casts cannot be used for transportation. So we're not talking about a differential. On this record, unequivocally, unless the law is changed or the contract is changed, these casts can't be used for that purpose. That's correct, and it's the government's position, as it advocated before both trial courts, that if and when the utilities are required to unpackage their canisters and repackage their fuel, that they can recover those speculative future costs, which we don't know what they're going to be. It might be as little as taking the canister out and putting it in. No, but they can't recover that. They can't recover later, because what the standard contract says is they're on the hook for loading fuel into a transportation cast. So when we get to the point of government performance and they have to open these casts up and take the fuel out of the existing location and put it into a transportation cast, they have to actually bear that cost. So they can't go after you later for that cost because that's exactly the cost the standard contract anticipates they will pay. The standard contract at Article 4A-2A says they are required to prepare and package their fuel sufficient for transportation to DOE. It doesn't say it has to go directly into a DOE-provided transportation cast. And the question is, what does that obligate the utilities to do? Here it obligates them to prepare and package each fuel assembly sufficiently for transportation. Whether these are sufficient for transportation, although we respectfully disagree with Judge Leto, is a question that will be determined at such time as DOE performs. The utility's position here is that we should assume... What do you disagree with Judge Leto about, just so I understand clearly? You said we specifically disagree with Judge Leto. Well, the government put forth evidence that we believe proved that the utilities and DOE will work together to make these transportation dual-purpose casts transportable, and it makes perfect sense for them to do so. This is a little bit outside this record, but as a way of explanation, Mr. Brewer's testimony was there are a number of utilities that have completely decommissioned their plant. They don't have spent fuel pools anymore. So for them to take their fuel that they've already loaded into these dual-purpose canisters and repackage it into a DOE-provided would cost hundreds of millions of dollars. DOE has no interest in, of course, requiring utilities to do that. There's evidence in the record that the utilities here specifically obtained the dual-purpose Holtec canisters because they are transportable, and they expected to be able to transport them in the future. So that is our disagreement with Judge Leto with respect to the future. But the more salient point is that on a causation question... But both Judge Leto and Judge Brayden recognize that DOE itself has said under the standard contract these things will not be accepted in these casts and would have to be moved from these things into transportation casts. What you're saying is in the future we might be willing to modify the current state of the law to work with them and accept these nonetheless. Well, that's true. I don't disagree with your repeating of Mr. Zebranski's testimony. The contract does contemplate amendments to the contract and that the parties will work together in good faith to come to those amendments. But as Judge Leto found right now, DOE's position is they are not acceptable. That pretty much does it, doesn't it? It doesn't, though, because what happens in the future is relevant under Carolina power to the avoided cost question. But as this court in Energy Northwest said, you don't get to the avoided cost... Is this thing really going to go until, what was it, 2048? I believe there are current estimates that have performance sooner, but I won't stand up here and speculate exactly when DOE will perform. Well, there's a six-year statute of limitations and these are in six-year increments. So it's realistic to say that six years from now we're going to see another one where it's still sitting in those casts. Correct. I would assume that they will be. The problem is that the question of what happens in the future is really only relevant to an avoided cost analysis. And that is what utilities have been pushing this court to apply to the government's causation challenge. But in Energy Northwest, this court held very clearly that you don't get to the avoided cost question until you have demonstrated causation. That the breach was the factor that caused the utilities to undergo these activities and incur these costs. And you have to go, as I said, Energy Northwest instructs, one level below. You can't just label them for storage. What are the actual activities and what are the activities you would have done in the non-breach world? Eileen Subko, the plaintiff's non-breach expert, has a detailed loading scenario for a hypothetical DOE cast which she could have quantified. She could have said, to load to a DOE cast, we would have incurred X amount. And then the court would have had the ability to compare that versus their incurred costs. The sole reason she didn't was instruction from counsel. Am I correct that these casts are sitting in pools of water? No. So the casks that they're sitting in are concrete storage overpacks. And then inside them are the canisters themselves that are loaded with the fuel. They drain the water out after they load them with the fuel and they backfill with a gas that dries them. So they're not sitting in water. I just want to One other thing that counsel for the utilities pointed out was that for Ms. Subko to quantify the non-breach loading costs would require speculation. But that's exactly what Energy Northwest says is the purpose of a non-breach world expert to fill in the gaps about what would have happened in the non-breach world. They have Ms. Subko testify in all of their cases. She speculates about a hypothetical DOE cast that could have been brought. She models an entire world around that cask in order to come up with what their non-breach costs would have been. She simply stopped short here again because they instructed her not to quantify those costs. If the court were to hold that because these fuel assemblies under this record need to be repackaged later, what the court would really be doing is undoing Energy Northwest and Yankee Atomic. Because what it would be doing is it would be relieving the utilities of their burden of demonstrating what they would have done in the non-breach world with DOE performance. It would be elevating Carolina Power well beyond the confines of its decision. What it said, Carolina Power quite clearly said, these are not costs that are avoided, they are deferred. With specificity, that only applies to costs that have been demonstrably proved to be caused by the breach. Here, we haven't reached the avoided cost question because we are still at the causation stage. Both Judge Braden and Mississippi found they did not meet their causation with any of their costs. Here, Judge Leto took it an extra step and found that at least two million of the costs they would have incurred with DOE performance. Thank you. I'll give you two minutes of rebuttal time. Thank you, Your Honor. To answer one of Judge Wallach's questions, there is fuel in a wet pool at both of these facilities, Your Honor. It is then taken from the wet pool, put in a storage cask, and then moved out to the dry fuel storage facility, which both plants have, and it's those costs associated with moving the fuel from the wet pool, getting it out to the dry storage facility that we're seeking to recover in this case. So right now, there are rods sitting in water. Yes. At both of these facilities. And as the months and years pass, we move that fuel because we have to or else the plants will have to shut down. I want to just say a quick word about the Envy decision on which Mr. Bruskin relies. First of all, that court found as a matter of fact that the costs that were at issue there, fuel characterization costs, would not necessarily be incurred in the future based on that record. That's a very different record than what we have here. We are going to have to incur costs in the future associated with moving the fuel that has been placed in the storage casks and transfer that fuel to a DOE transportation cask at such time as DOE performs. I also briefly just want to say a few words about this court's decision, which I believe Judge Mayer authored roughly a decade ago in Indiana, Michigan. Indiana, Michigan tells us a couple of things of critical importance. Number one, you can't speculate about future costs. In the Indiana, Michigan case, at that time the issue before the court was a total breach and whether or not we could recover the entirety of the costs at issue in that case. Indiana, Michigan said, no, you can't do that. You've got to come back every six years and you've got to prove your actual incurred costs. Whatever label the government wants to put on it, what they're trying to do is take out of our high today the costs associated with removing the fuel that's out of these dry storage facilities and putting them in their transportation cask. As Judge Moore has noted, that is a cost which is going to be incurred in the future. Indiana, Michigan says, I, a plaintiff, can't get that future cost, nor should the government be entitled to get a benefit from a future cost yet to be incurred. These are deferred costs. They're going to be incurred again. We're entitled to recover for them now. Thank you. Thank both counsel for their arguments. The cases are taken under submission. All rise.